UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN CONNORS,<br><br>  Plaintiffs,<br><br>v.<br><br>JIM SHORKEY FAMILY AUTO GROUP d/b/a KAJARUDAN, INC. and JIM SHORKEY, III, individually,<br><br>  Defendants. | Case No. 2:17-cv-01003-CB<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, Lauren Connors, by and through her attorney, Christi Wallace, Esquire, and Martell Harris, Esquire, files this Second Amended Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiffs bring this Second Amended Complaint to recover damages under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq*. Plaintiff faced significant sexual harassment which management was aware of. Defendants re-hired Plaintiff's harasser and subjected Plaintiff to a sexual harassment hostile work environment and retaliation.

### II. Jurisdiction and Venue

2. This action arises under Title VII, 42 U.S.C. §2000e. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331

3. This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1332(a).

### III. Parties

4. Plaintiff, Lauren Connors ("Plaintiff"), is an adult individual residing at 212 Dorothy St., Scottdale, PA 15683.

5. Defendant, Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc. ("Defendant"), is a business with a location at 12900 Route 30, North Huntington, PA 15642.

6. Defendant, Jim Shorkey III ("Shorkey"), is an individual located at 12900 Route 30, North Huntington, PA 15642.

### IV. Facts

7. Plaintiff was employed by Defendant on or about September 4, 2013 as a Sales Person.

8. Plaintiff was sexually assaulted by coworker, Todd Holland ("Holland"), during a work-related trip to Las Vegas on October 18, 2015.

9. While on the work-related trip in Las Vegas, Plaintiff was drugged by Holland in a hotel room and sexually assaulted.

10. After an investigation into the incident, Defendant determined Holland did sexually assault Plaintiff.

11. Holland was given the option to resign by Defendant, which he accepted.

12. Holland's resignation, in lieu of termination, entitled Holland to a severance payment and his commissions.

13. Plaintiff suffered severe emotional distress from this incident and had to seek medical treatment.

14. Plaintiff was not allowed time off in order to deal with or process the sexual assault she had been subjected to.

15. Plaintiff did ask Shorkey for time off of work after the sexual assault and was told she would have to use her vacation time.

16. In October of 2016, Shorkey informed Plaintiff he intended to re-hire her attacker, Holland, to work for Defendant.

17. Plaintiff expressed numerous times to Shorkey how upsetting this was and that it was causing her mental health to deteriorate.

18. By re-hiring Holland, Defendant was creating a hostile work environment.

19. Plaintiff sent numerous emails to Shorkey detailing how re-hiring Holland to work with her would drastically and negatively affect her health.

20. Plaintiff was given four options in relation to Holland being re-hired:

   a. Plaintiff could be moved to a different dealership where she would need to change schedules and adapt to an entirely different workplace;

   b. Plaintiff could accept a different position in her current location with significantly less pay;

   c. Plaintiff could remain at the current dealership and deal with immense anxiety and mental health issues while having to work with Holland; or

   d. Plaintiff could quit her job.

21. None of the options given to Plaintiff were viable as moving to a new dealership would affect Plaintiff's time with her child and put her in an uncomfortable situation in a new location. Option two would result in significantly less income. Option three would result in severe stress and anxiety daily. Lastly, option four would leave Plaintiff without a job.

22. Each option would cause undue stress to Plaintiff while Holland would receive a new, high paying job.

23. Plaintiff was unable to decide her course of action at that time due to being under extreme stress with the knowledge that Holland was returning to work with her.

24. Plaintiff used her vacation time on October 24, 2016 and took a week off work to think about her options and what she would choose.

25. While on vacation, Plaintiff was continually harassed by Shorkey for an answer to his employment options for her despite Plaintiff specifically stating she was taking a week off to think about it.

26. While Plaintiff was on vacation her schedule was changed and she was moved to the position of Finance Manager with no more responsibility involving "running the desk," which she had had prior.

27. This change was made around the same time Holland returned to work for Defendant.

28. Shorkey additionally told Plaintiff to "put your game face on" and "fake it" for the sales team. Meaning Shorkey expected Plaintiff, after suffering a sexual assault by Holland to pretend she was not anxious and was comfortable working with her assaulter again.

29. Shorkey told Plaintiff to "control her emotions" despite being forced to work with the person who sexually assaulted her.

30. Holland returned to work for Defendant on October 27, 2016.

31. Plaintiff returned to work on October 31, 2016 in an attempt to work with Holland and keep her job and income level.

32. When Plaintiff returned, memories returned and she was physically ill the entire time in which she worked with Holland on that day.

33. Plaintiff mental health deteriorated exponentially while working with Holland for only one day.

34. Shorkey still refused to acknowledge Plaintiff's mental anguish and refused to offer any option that would allow Plaintiff to keep her current position or make similar income.

35. Plaintiff was constructively discharged on October 31, 2016 due to harassment and a hostile environment.

## V. Allegations

### Count I
**Sexual Harassment Hostile Work Environment in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. against Defendant Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc.**

36. The preceding paragraphs are incorporated herein as if set forth at length.

37. Plaintiff's protected class is sex/gender.

38. All administrative remedies were exhausted.

39. Plaintiff suffered intentional discrimination because of her sex/gender.

40. The discrimination was pervasive and regular in that:

   a. Defendant re-hired Mr. Holland although it was known it would upset Plaintiff and cause her mental health to deteriorate.

   b. Plaintiff explained numerous times how much Holland's return affected her but Holland was still re-hired. Defendant deliberately contributed to Plaintiff's health's decline.

   c. By re-hiring Holland, Plaintiff was subjected having to work with her attacker every day, which would cause her to relive the heinous actions that he took against her.

   d. Holland was in management and Plaintiff could have interactions with him as part of her everyday job duties.

   e. Defendant forcefully subjected Plaintiff to a hostile work environment and sexual harassment.

   f. Defendant failed to offer any reasonable alternative or accommodation.

41. Plaintiff was given four options:

   a. Be moved to a different dealership where she would need to change schedules and adapt to an entirely different work place;

   b. Accept a different position with significantly less pay;

   c. Remain at the current dealership and deal with immense anxiety; or

   d. Quit.

42. None of these options were viable.

43. While Plaintiff was on vacation, her schedule was changed and she was moved back to the position of Finance Manager with no more responsibility of "running the desk" which she had had previously.

44. Plaintiff was told she had to "put her game face on" and "fake it" for the sales team.

45. Plaintiff was forced to work with Holland and have her hours/position changed, and she was being asked to mask her emotions after being sexually assaulted by this individual.

46. This discrimination detrimentally affected the plaintiff because it caused her to feel anxious, depressed, and fearful because the possibility of interacting with her sexual harasser made her relive her attack.

47. Given the pervasive nature of this harassment, the discrimination would have detrimentally affected a reasonable person of the same sex in Plaintiff's position.

48. There is an existence of *respondeat superior* liability because:

    a. Defendant was negligent and/or reckless in failing to take remedial action upon notice of the harassment.

    b. Although Mr. Holland was fired, Defendant was negligent and/or reckless in re-hiring Holland and allowing him to come in contact with Plaintiff.

    c. Furthermore, the remedial action taken by the employer must be reasonably calculated to prevent further harassment. It is not reasonably calculated to fire an employee and then rehire them. Re-hiring Holland would not prevent further harassment, but welcome it.

49. Here, Defendant's decision to reinstate Holland undermined the public policy against sexual harassment.

50. Plaintiff could take a lower paying position or resign while the man who sexually assaulted her was permitted to resign with a severance and commissions. Further, Holland was given a new, higher paying position upon rehire.

### COUNT II
**Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. against Defendant Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc.**

51. All preceding paragraphs are incorporated here as if set forth at length.

52. Plaintiff is protected under Title VII because of her sex/gender.

53. With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII.

54. Plaintiff engaged in protected activity when:

    a. Plaintiff expressed numerous times to Defendant how Holland's rehire was causing her mental health to deteriorate.

    b. By re-hiring Holland, Defendant created a hostile work environment.

    c. Plaintiff sent numerous emails to Defendant detailing how re-hiring Holland to work with her would drastically and negatively affect her health

55. An adverse employment action is anything that is a material adverse change in the terms and conditions of employment. Plaintiff repeatedly referencing her feelings on the matter of Mr. Holland's being rehired constitutes protected activity.

56. Defendant retaliated against Plaintiff when:

    a. While Plaintiff was on vacation, her schedule was changed and she was moved back to the position of Finance Manager.

    b. Plaintiff was told she had to "put her game face on" and "fake it" for the sales team.

    c. Plaintiff was forced to work with Holland.

57. There is a casual connection between the employee's participation in the protected activity and the adverse action given the short amount of time between the Plaintiff's asking not to work with Mr. Holland and her being moved from her position.

### Count III
### Sexual Harassment Hostile Work Environment in Violation of Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. against Defendant Jim Shorkey III

58. The preceding paragraphs are incorporated herein as if set forth at length.

59. Plaintiff's protected class is sex/gender.

60. All administrative remedies were exhausted.

61. Plaintiff is entitled under Pennsylvania law to a harassment-free work environment.

62. Plaintiff suffered a hostile work environment when Defendant's Vice President of Sales and General Manager, Holland, sexually assaulted her.

　　a. Holland's actions were severe;

　　b. Plaintiff was detrimentally affected by Holland's actions; and

　　c. A reasonable person in Plaintiff's position would be detrimentally affected.

63. Plaintiff put Shorkey on additional notice of the hostile work environment when she reported the sexual assault. Shorkey and Defendant acknowledged her complaint, investigated same, and determined Holland did in fact sexually assault Plaintiff.

64. Shorkey allowed the previous hostile environment to resume when it decided to re-hire Holland and to place him back in a management position. Plaintiff put Shorkey on additional specific notice that she disagreed with the decision and that it caused her mental distress. Plaintiff attempted to work with Shorkey to resolve her issues without resorting to leaving her job. Shorkey failed to provide any remedy that would prevent Holland's contact with Plaintiff and/or allow Plaintiff to work in her position and/or at her previous pay.

65. Each of the options Shorkey presented to Plaintiff would constitute an adverse employment action as follows:

　　a. If Plaintiff was reassigned to a different dealership, then she would lose her current schedule and work in a market outside of which she had grown accustomed with unfamiliar products. In the car sales business, the location of your dealership has a significant impact on clientele, and ultimately, commissions earned from car sales;

　　b. If Plaintiff was reassigned to a different position within her current dealership, then she would no longer be selling vehicles, and thus unable to earn commissions based on those sales, and would ultimately earn significantly less money;

    c. If Plaintiff remained her current position and worked with Holland, then she would be constantly subjected to anxiety and memories of the sexual assault that she endured.  This would have an immediate and irreparable impact on her job performance, would negatively impact her income, and potentially expose her to corrective action based on poor performance; and,

    d. If Plaintiff quit her job, then she would lose pay, benefits, and would become unemployed.

66. Plaintiff chose to attempt to work with Holland, so as to not affect her schedule, duties, or pay.  Unfortunately, she was unable to follow Shorkey's instructions to "fake it" "put on [her] game face" or "control [her] emotions" and thereupon, resigned her employment.

## COUNT IV
**Retaliation in Violation of Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. against Defendant Jim Shorkey III**

67. All preceding paragraphs are incorporated here as if set forth at length.

68. Plaintiff is protected under Title VII because of her sex/gender.

69. Plaintiff is entitled under Pennsylvania law to oppose practices of an employer for which she has a good faith belief violate anti-discrimination laws.

70. With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII.

71. Plaintiff engaged in protected activity when she:

    a. Made good faith oppositions to Shorkey's decision to re-hire Holland;

    b. Expressed numerous times to Shorkey how Holland's rehire was causing her mental health to deteriorate;

    c. Stated told Shorkey that re-hiring Holland created a hostile work environment; and

      d. Sent numerous emails to Shorkey detailing how re-hiring Holland to work with her would drastically and negatively affect her health.

72. Following her protected activities, Plaintiff was subjected to adverse employment actions with each of the options Shorkey presented to her:

      a. If Plaintiff was reassigned to a different dealership, then she would lose her current schedule and work in a market outside of which she had grown accustomed with unfamiliar products. In the car sales business, the location of your dealership has a significant impact on clientele, and ultimately, commissions earned from car sales;

      b. If Plaintiff was reassigned to a different position within her current dealership, then she would no longer be selling vehicles, and thus unable to earn commissions based on those sales, and would ultimately earn significantly less money;

      c. If Plaintiff remained her current position and worked with Holland, then she would be constantly subjected to anxiety and memories of the sexual assault that she endured. This would have an immediate and irreparable impact on her job performance, would negatively impact her income, and potentially expose her to corrective action based on poor performance; and,

      d. If Plaintiff quit her job, then she would lose pay, benefits, and would become unemployed.

73. Plaintiff's adverse employment actions are made under circumstances where retaliatory motive could be inferred.

74. Plaintiff's adverse employment actions are made under circumstances where the temporal proximity of the employment action to the protected activity is unduly short.

75. Plaintiff suffered injury and damages directly and proximately caused by Shorkey's acts and omissions regarding the choices offered to her, including but not limited to, its encouragement for her to quit her job, which she ultimately did.

76. There is a casual connection between the employee's participation in the protected activity and the adverse action given the short amount of time between the Plaintiff's asking not to work with Holland and her being moved from her position.

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for the following:

    a. Loss of wages;

    b. Loss of future wages;

    c. Additional compensatory and/or punitive;

    d. Plaintiff's legal fees;

    e. Pre-judgment and continuing interest;

    f. Court costs; and

    g. Other such relief as the Court may deem just and proper.

Respectfully submitted,

*Christi Wallace*

Christi Wallace, Esq.
Kraemer, Manes and Associates, LLC
U.S. Steel Tower, 48th Floor
600 Grant Street, Suite 4875
Pittsburgh, PA 15219

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, I electronically filed the foregoing Plaintiff's Second Amended Complaint with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Donald McCormick, Esq.<br>
Two Chatham Center, Suite 1500<br>
112 Washington Place<br>
Pittsburgh, PA 15219

/s/   Christi Wallace
Christi Wallace, Esq.
Pa ID: 313721
**KRAEMER, MANES & ASSOCIATES LLC**
US Steel Tower, 48th Floor
600 Grant St, Suite 4875
Pittsburgh, PA 15219
(412) 626-5575 Direct
(412) 206-0834 Fax
cw@lawkm.com

/s/Martell Harris
Martell Harris, Esquire
PA I.D. No. 319504
**KRAEMER, MANES & ASSOCIATES LLC**
US Steel Tower, 48th Floor
600 Grant St, Suite 4875
Pittsburgh, PA 15219
(412) 626-5585 Direct
(412) 637-0231 Fax
mh@lawkm.com