IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN CONNORS, | Case No.: 2:17-cv-01003-CB |
| Plaintiff, | ELECTRONICALLY FILED |
| v. | |
| JIM SHORKEY FAMILY AUTO GROUP d/b/a KAJARUDAN, INC. and JIM SHORKEY III, individually, | HON. CATHY BISSOON |
| | JURY TRIAL DEMANDED |
| Defendants. | |

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
## COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

AND NOW come Defendants, Courtesy Oldsmobile, Inc., d/b/a Jim Shorkey Kia, incorrectly identified in the caption as Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc., and Jim Shorkey, III, by and through their attorneys, Dell, Moser, Lane & Loughney, LLC, Donald J. McCormick, Esquire, and Jeffrey P. Burke, Esquire, and file the following Brief in Support of Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to F.R.C.P. 12(b)(6), stating as follows:

### I. STATEMENT OF THE CASE

This action was commenced when Plaintiff Lauren Connors ("Plaintiff") filed a Complaint on July 31, 2017, allegedly arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). On October 2, 2017, Courtesy Oldsmobile, Inc., d/b/a Jim Shorkey Kia, incorrectly identified in the caption as Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc., (hereinafter "Shorkey Kia") filed a Motion to Dismiss Plaintiff's Complaint

1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), as the Complaint did not allege any factual basis to impose liability against Shorkey Kia under Title VII. In response, Plaintiff filed an Amended Complaint on October 23, 2017, which was equally devoid of merit. Shorkey Kia, therefore, filed a Motion to Dismiss Plaintiff's Amended Complaint on November 2, 2017. Plaintiff then filed a Motion for Leave to File Second Amended Complaint. Plaintiff was granted leave to Amend her Complaint once more, for the purpose of adding analogous claims against Shorkey Kia under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.* ("PHRA"), amending the caption, and asserting individual claims against Jim Shorkey, III ("Mr. Shorkey")[1]. On December 7, 2017, Plaintiff filed a Second Amended Complaint. Despite having been permitted two amendments, Plaintiff has not, and cannot, remedy the deficiencies in her original Complaint. Accordingly, this action should be dismissed with prejudice.

According to the Second Amended Complaint, Plaintiff was employed with Shorkey Kia on or about September 4, 2013, as a Sales Person. (Second Amended Complaint, ¶ 7.) On October 18, 2015, Plaintiff was allegedly sexually assaulted by a coworker, Todd Holland ("Holland"), during a work-related trip to Las Vegas. (Second Amended Complaint, ¶ 8.) Following an investigation, Shorkey Kia allegedly determined that Holland sexually assaulted Plaintiff, and Holland was given the option to resign, which he accepted. (Second Amended Complaint, ¶¶ 10-11.)

It is alleged that, in October of 2016, roughly one (1) year later, Mr. Shorkey informed Plaintiff that he intended to re-hire Holland, to which Plaintiff objected. (Second Amended Complaint, ¶¶ 16-17.) Plaintiff claims that she was given four options in relation to Holland's being re-hired: remain at the current dealership, move to a different dealership, accept a different

---

[1] No where in the Complaint does Plaintiff identify Mr. Shorkey's position at Shorkey Kia. Rather, Plaintiff simply identifies Mr. Shorkey as "an individual located at" Shorkey Kia's address. (Second Amended Complaint, ¶ 6.)

2

position with less pay or quit her job. (Second Amended Complaint, ¶ 21.) Plaintiff alleges that none of these options was "viable", and that she took a week of vacation to think about her options. (Second Amended Complaint, ¶¶ 21, 24.) Plaintiff alleges that, while she was on vacation, she was moved to a different position as Finance Manager. (Second Amended Complaint, ¶ 26.) Plaintiff also asserts that, in response to her objections about Holland being hired, Plaintiff was told by Mr. Shorkey to "put your game face on" and "fake it" for the sales team. (Second Amended Complaint, ¶¶ 28, 29.) Plaintiff contends that these actions were retaliatory based upon her objection to Holland's being rehired. (Second Amended Complaint, ¶ 56.)

Holland allegedly began working for Shorkey Kia on October 27, 2016. (Second Amended Complaint, ¶ 30.) Plaintiff returned from a vacation on October 31, 2016. (Second Amended Complaint, ¶ 31.) Plaintiff alleges that, when she returned to work, "memories returned", that she was "physically ill" and that her "mental health deteriorated" due to having to "work with" Holland on this one day. (Second Amended Complaint, ¶¶ 32, 33.) Plaintiff alleges that Shorkey Kia still refused to offer any option that would allow Plaintiff to keep her current position or make similar income. (Second Amended Complaint, ¶ 34.) Plaintiff therefore claims that she was constructively discharged "due to harassment and a hostile work environment" on October, 31, 2016. (Second Amended Complaint, ¶ 35.)

Count I is a claim for "Sexual Harassment Hostile Work Environment" under Title VII and the PHRA. Plaintiff makes the vague, conclusory allegations that, by re-hiring Holland, Plaintiff "was subjected to having to work with her attacker every day", while simultaneously alleging only that "Plaintiff *could have* interactions with [Holland] as part of her everyday job duties". (Second Amended Complaint, ¶ 40(c), (d)) (emphasis added.) Significantly, however, Plaintiff again alleges no facts to support the conclusion that there was any "interaction" between

3

the parties on the one day Plaintiff returned to work before quitting. Plaintiff then alleges that she was subjected to "pervasive" harassment because Shorkey Kia allegedly "failed to offer any reasonable alternative", changed her position to Finance manager, and asked her to "mask her emotions". (Second Amended Complaint, ¶ 40(f), 45.) Plaintiff claims that she was, therefore, subjected to a hostile work environment because of her sex/gender.

Simply put, Plaintiff alleges that an incident of sexual harassment occurred with a co-worker, and that Shorkey Kia investigated the incident and reprimanded the co-worker. In Shorkey Kia's Motion to Dismiss the original Complaint, Plaintiff was challenged to offer <u>any</u> facts to demonstrate or suggest that, following the alleged rehiring of Holland in 2016, any sexual harassment occurred, or any facts to substantiate her vague, conclusory allegation that she would be required to "work with" Holland (whatever that means). After amending the Complaint, Plaintiff has still <u>offered none</u>.[2] Accordingly, it is clear that the facts alleged in support of Count I of the Second Amended Complaint are insufficient as a matter of law to establish the existence of a hostile work environment in violation of Title VII or the PHRA.

Count II of the Second Amended Complaint is a claim for Retaliation, based upon allegedly being moved to Finance Manager, being told to "put her game face on and "fake it", and being "forced to work with Holland". (Second Amended Complaint, ¶ 56.) In short, this claim is also meritless, as Plaintiff has failed to allege any facts to establish any material, adverse changes to her employment as a result of her engaging in any protected activity under Title VII or the PHRA. Indeed, Plaintiff acknowledges she was allowed to remain at her current dealership, where no subsequent harassment or interaction with Holland has been alleged to have

---

[2] This significant omission is deliberate. Holland was not hired for his former position, but rather he was hired at a different position at another Shorkey dealership roughly 50 miles away from Plaintiff's location, which was owned and operated by a separate entity, Kajarudan, Inc.

4

occurred. Therefore, Plaintiff's attempt to cast Shorkey Kia's actions as retaliatory fails as a matter of law.

In Counts III and IV, Plaintiff asserts claims for Sexual Harassment Hostile Work Environment and Retaliation against Mr. Shorkey, individually, pursuant to the PHRA. Significantly, it is well-settled that individual employees cannot be held liable if the employer is not liable for a discriminatory practice. Moreover, for purposes of Plaintiff's hostile work environment and retaliation claims, the standard for employer liability under the PHRA is the same standard applied for purposes of Title VII. Accordingly, because Plaintiff's claims under Title VII and the PHRA fail against Shorkey Kia, Plaintiff's claims against Mr. Shorkey cannot proceed, and Counts III and IV must also be dismissed with prejudice.

Based on the foregoing, and in light of the failure of Plaintiff to plead any additional facts in her Second Amended Complaint to substantiate her claims, it is clear that there is no factual basis to this litigation. The conclusory allegations set forth in the Second Amended Complaint fail to state a *prima facie* case for relief under Title VII or the PHRA for sexual harassment, hostile work environment, retaliation, or any other conceivable theory. The Second Amended Complaint should, therefore, be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Moreover, as Plaintiff has failed to remedy the deficiencies in her original Complaint, Plaintiff should not be permitted to amend her Complaint a third time, and this action should be dismissed with prejudice.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for failure to state a claim upon which relief can be granted. Fed. R.C.P. 12(b)(6). Plaintiff's obligation to state the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Id*. Conclusory or bare bones allegations will not survive a motion to dismiss, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out sufficient factual matter to show that the claim is facially plausible. *Id*.

The Supreme Court set forth in *Twombly*, and further defined in *Iqbal*, a two-part test to determine whether to grant or deny a motion to dismiss. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 178 L.Ed.2d 868 (2009). First, the factual and legal elements of the claim must be separated. *Iqbal*, 556 U.S. at 679. A District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Id*. The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. *Wilson v. City of Phila.*, 415 F. App'x. 434, 436 (3d Cir. 2011).

### III. ARGUMENT

A.  **Plaintiff has failed to allege facts to state claims in Counts I and III for sexual harassment or hostile work environment under Title VII or the PHRA against Shorkey Kia or Jim Shorkey, III.**

The standard for employer liability is the same under Title VII and the PHRA. See *Clegg v. Falcon Plastics, Inc.*, 174 Fed.Appx. 18, 24 n. 6 (3d Cir. 2006) (holding, for purposes of a hostile work environment claim, that the court's Title VII analysis would apply equally to the

6

plaintiff's PHRA claim); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d. Cir. 2002) (Title VII standards are applied when analyzing retaliation cases under the PHRA). Moreover, individual employees cannot be held liable if the employer is not liable for a discriminatory practice. *See Deans v. Kennedy House, Inc.*, 998 F.Supp.2d 393, 414 (E.D. Pa. 2014), affirmed 587 Fed.Appx. 731 (3d Cir. 2014), citing *Scott v. Sunoco Logistics Partners, LP*, 918 F.Supp.2d 344, 357 n. 5 (E.D. Pa. 2013) ("If the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice.")[3] Instantly, Plaintiff has failed to allege facts sufficient to state a claim for sexual harassment or hostile work environment under Title VII or the PHRA. Plaintiff's claims, therefore, fail as a matter of law, and should be dismissed with prejudice. Furthermore, as Plaintiff has failed to allege any facts to establish any discriminatory practices engaged in by Shorkey Kia, Plaintiff's claims against Mr. Shorkey cannot proceed, and Counts III and IV must also be dismissed.

Under Title VII and the PHRA, an employer cannot "'discharge ... or ... discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment because of such individual's ... sex.'" *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Presently, Plaintiff claims that her allegations regarding discriminatory practices and actions at her place of employment create a hostile work environment, based on her sex, in violation of Title VII and the PHRA. In order for Plaintiff to plead a *prima facie* case of a hostile work environment based upon sexual harassment, she must prove that "'(1) she suffered intentional discrimination because of her sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position,

---

[3] *See also* 43 Pa. Stat. Ann. § 955(e) (It shall be an unlawful discriminatory practice ... For any person ... to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ...)

7

and (5) the existence of *respondeat superior* liability.'" *Martinez v. Rapidigm, Inc.*, 290 Fed.Appx. 521, 524 (3d Cir. 2008) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (internal alterations omitted)). Notably, it is well-established that to prove the second element of a hostile work environment claim, it is not sufficient for Plaintiff to have subjectively perceived the harassment as severe or pervasive; the conduct in question must also be so severe or pervasive that it creates an objectively hostile work environment. *See Brooks v. CBS Radio*, 342 Fed. Appx. 771 776 (3d Cir. 2009) citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

Plaintiff alleges that at the time of the assault Holland was a "coworker". (Second Amended Complaint, ¶ 8.) "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). To make such a showing, a plaintiff must demonstrate that the employer was "'negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment.'" *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir.2007) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir.1997). "An effective grievance procedure – one that is known to the victim and that timely stops the harassment – shields the employer from Title VII liability for a hostile environment." *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 110 (3d Cir. 1994). "Prompt remedial action" is conduct "reasonably calculated to prevent further harassment." *Id.*; *Bonenberger*, 132 F.3d at 26. However, this should not be taken to mean that an employer's investigation into discriminatory activity must be perfect—or even adequate. *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir. 1997). Further, "even if a remedial action does not effectively end the alleged harassment, it may still be legally 'adequate' if it was 'reasonably calculated to do so." *Peace–Wickham v. Walls*, 409 Fed.Appx. 512, 519 (3d Cir. 2010) (citing *Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006)). Thus, when

the employer's response stops the harassment, there can be no employer liability under Title VII or the PHRA as a matter of law. *Weston*, 251 F.3d at 427; *Bouton*, 29 F.3d at 110 ("By definition, there is no negligence if the [sexual harassment grievance] procedure is effective."). Moreover, in such situations, the employee cannot require the employer to choose a certain remedial action. *Knabe*, 114 F.3d at 414.

In *Weston, supra*, a male culinary service officer brought an action against Pennsylvania Department of Corrections ("PDOC") and a female coworker alleging hostile work environment sexual harassment and retaliation in violation of Title VII and the PHRA. Specifically, the plaintiff asserted, *inter alia*, that he was subjected to a hostile work environment as a result of the PDOC's failure to discipline his co-worker after she had inappropriately touched him on two occasions. The District Court dismissed officer's hostile work environment claims for failure to state a claim, and the plaintiff appealed. On appeal, the Third Circuit affirmed the dismissal:

> **Weston alleged in his complaint that the PDOC was liable for [defendant's] harassment because it failed to prevent her from assaulting him and did not adequately discipline her. This argument has no merit. ... [Plaintiff] does not allege that the offensive conduct continued after the reprimand. We have instructed that "an effective grievance procedure—one that is known to the victim and that timely stops the harassment—shields the employer from Title VII liability for hostile environment." Moreover, when an employer's response stops the harassment, there can be no employer liability under Title VII.** The PDOC's grievance procedure was obviously known to [plaintiff] (he filed a complaint) and, by his own admission, it was effective. Liability cannot be imputed to the PDOC for [defendant's] conduct or for its alleged failure to adequately reprimand her.

*Id.*, 251 F.3d at 426 (Internal citations omitted.) *See also Maher v. Associated Services for the Blind*, 929 F.Supp. 809 (E.D. Pa. 1996), aff'd, 107 F.3d 862 (3d Cir. 1997) (where complaint to management stopped sexually suggestive comments, employer entitled to judgment as a matter of law: "we conclude that a reasonable jury could not render a verdict in Ms. Maher's favor as to

her constructive discharge claim, since there is no evidence from which a jury could infer that ASB permitted the discriminatory behavior to continue.")

In *Knabe v. Boury Corp.*, 114 F.3d 407 (3d Cir. 1997), a waitress filed a complaint alleging she was the victim of sexual harassment by a male restaurant manager in violation of Title VII and the PHRA. The District Court for the Western District of Pennsylvania granted summary judgment in favor of the employer, and the plaintiff appealed. The Third Circuit held that although the employer's response to the alleged harassment may have been inadequate, the employer could not be held liable where the action taken by the supervisor in warning the manager was reasonably calculated to stop his harassment:

> **Even though the company did not reprimand [the manager], as it well might have, we find this remedial action adequate as a matter of law because it was reasonably calculated to prevent further harassment.** As a result of the two meetings with [the restaurant supervisor], [the manager] was made aware of his responsibilities, and [plaintiff] was made aware of her rights in case of future improper conduct. **[Plaintiff] has presented no evidence that there would have been a hostile work environment had she returned or that [the manager] would have felt free to continue his harassment upon her return to work.**

*Id.*, at 413.

Significantly, the Third Circuit in *Knabe* flatly rejected the plaintiff's objections to the remedial action selected by her employer, as well as her argument that the manager should have been transferred from the restaurant or fired:

> **We conclude that, if the remedy chosen by the employer is adequate, an aggrieved employee cannot object to that selected action.** Concomitantly, **an employee cannot dictate that the employer select a certain remedial action.** We agree with the Seventh Circuit that: "No doubt, from [the plaintiff's] perspective, [the defendant] could have done more to remedy the adverse effects of [the employee's] conduct. But **Title VII requires only that the employer take steps reasonably likely to stop the harassment."** [citing *Saxton v. AT&T Co.*, 10 F.3d 526, 535 (7th Cir.1993)].

*Id.*, at 414.

Importantly, the Third Circuit has clearly pronounced that requiring an employee to continue working with a coworker who harassed her is, by itself, insufficient to create liability under Title VII. In *Kokinchak v. Postmaster General of the United States*, 677 Fed. Appx. 764 (3d Cir. 2017), the Plaintiff claimed that a coworker spoke to her and touched her in sexually inappropriate ways in 1999. Based on that behavior, the plaintiff filed a lawsuit asserting sexual harassment claims, which were subsequently settled. The plaintiff then filed a second lawsuit, claiming that the same coworker began sexually harassing her again in 2008. The alleged 2008 harassment consisted of several incidents where the coworker physically came in contact with her, by brushing by her or bumping into her. The plaintiff further alleged that the Postmaster violated Title VII by subjecting the plaintiff to the "presence" of the coworker. The District Court granted the Postmaster's Motion to Dismiss under Rule 12(b)(6) regarding the 2008 allegations because, even if true, the alleged conduct was "not sufficiently severe or pervasive enough to alter the conditions of employment". *Id.*, at 767. Moreover, the District Court found that "the mere presence of a harasser, on its own, is not enough to meet the hostile work environment standard." *Id.* (emphasis added.)

Significantly, on appeal, the Plaintiff argued that "a Plaintiff who has already been the victim of sexual harassment by the same person, does not have to establish that she suffered severe and pervasive acts of harassment at the hands of the perpetrator, if the perpetrator had engaged in such a severe and pervasive conduct in the past." *Id.* The Appeals Court expressly rejected this argument, and affirmed the dismissal of the complaint, stating that the Third Circuit has "rejected the notion that "requiring the plaintiff to work in proximity to former harassers constituted illegal sexual harassment *per se*."" *Id.*, quoting *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 718 (3d Cir. 1997).

The Third Circuit has also established that an employee's resignation due to "subjective fears" of "possible future" behavior is insufficient to support a claim for constructive discharge. In *Tunis v. City of Newark*, 184 Fed. Appx. 140 (3d Cir. 2006), a former captain in the Newark Police Department filed a complaint alleging that he was constructively discharged by the City of Newark on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), and analogous New Jersey state law. The District Court granted the city's Motion for Summary Judgment, which was affirmed on appeal by the Third Circuit. In dismissing the claim of constructive discharge, the Third Circuit held:

> [Plaintiff's] argument that he believed that the disciplinary charge was used to "get" him and he therefore feared termination in the future is unpersuasive. **The law of constructive discharge is not concerned with subjective fears of possible future dismissal.**

*Id.*, at 143 (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1082-1083 (3d Cir.1992)). *See also Nagle v. RMA, The Risk Management Ass'n*, 513 F.Supp.2d 383, 392 (E.D. Pa May 15, 2007) (citing *Tunis* and granting Summary Judgment: "Plaintiff claims that she was constructively discharged because after the November 18 meeting she believed that her working relationship with her superiors had been permanently damaged and that she was subject to termination at any time. However, other than her own subjective belief that she had no future at RMA following the November 18 meeting, she has offered no evidence of intolerable working conditions prior to or following that single incident."); *Kantz v. University of the Virgin Islands*, 2016 WL 2997115, *13 (D. Vi. May 19, 2016) (judgment entered as a matter of law for employer because Plaintiff's subjective fear that she was to be "targeted" in the future cannot serve as justification for her constructive discharge claim).

Instantly, Plaintiff alleges that an incident of sexual harassment occurred with a co-worker, and that Shorkey Kia investigated the incident and reprimanded the co-worker. Plaintiff

12

has failed to allege any facts that indicate that any sexual harassment or interaction between Plaintiff and Holland occurred following the alleged rehiring of Holland roughly one (1) year later. In Shorkey Kia's Motion to Dismiss, Plaintiff was challenged to offer any facts to substantiate her vague, conclusory allegation that she would be required to "work with" Holland when he was hired in 2016. Plaintiff has offered none. Indeed, there are no allegations in the Second Amended Complaint that any communications in any form occurred between the two, or that Plaintiff ever even saw Holland.

The only material change in Plaintiff's allegations from the original Complaint is that she now alleges that she "*could have* interactions with [Holland] as part of her everyday job duties", without pleading any facts demonstrating how this was possible. (Second Amended Complaint, ¶ 40(d).) The Third Circuit has expressly ruled that requiring an employee to continue working with a co-worker who previously harassed her, even if this includes sexually inappropriate contact, is, by itself, insufficient as a matter of law to create a hostile work environment. *See Kokinchak, Konstantopoulos, supra.* Indeed, even where the former harasser has interaction with the plaintiff, dismissal of the Complaint is appropriate absent evidence that the conduct is severe or pervasive enough to alter the conditions of employment. *See Kokinchak, supra*, at 767. Here, Plaintiff has alleged nothing beyond her subjective feelings about interaction she hasn't had, but "could have" with Holland in the future. Plaintiff's subjective fears about possible future interactions cannot serve as justification for her constructive discharge claim. *See Tunis, Kantz, Nagle, supra.* Accordingly, there are no alleged facts from which a jury could infer that Shorkey Kia permitted any discriminatory behavior to continue or that in any way demonstrate that a hostile work environment existed relative to the 2016 hiring of Holland.

Notwithstanding the foregoing, Plaintiff attempts to bolster her claim of a hostile work environment by claiming that, in response to her complaints about Holland's 2016 hiring, she

13

was assigned to the position of Finance Manager, with "no more responsibility of running the desk", which allegedly caused a change in her hours. Plaintiff also asserts that Shorkey Kia offered her several alternative employment options, and that Mr. Shorkey allegedly made comments to her ("put your game face on" and "fake it" for the sales team, ¶ 28), in response to her complaints about Holland's 2016 hiring. These allegations clearly cannot give rise to a Title VII or PHRA violation. Even if true, the alleged action by Shorkey Kia and Mr. Shorkey was not taken in response to Plaintiff's reporting the original harassment one (1) year earlier, but rather was allegedly in response to Plaintiff's subsequent complaints regarding the decision to hire Holland in 2016. The Third Circuit has expressly ruled that "an employee cannot dictate that the employer select a certain remedial action". *Knabe, supra,* at 414. Moreover, as long as Shorkey Kia's conduct was reasonably calculated to prevent further harassment, Shorkey Kia and Mr. Shorkey cannot be held liable under Title VII or the PHRA, regardless if Plaintiff subjectively felt its actions were inadequate. *Id.*, at 412, 413.

Simply put, Plaintiff has not alleged any facts to demonstrate that the work place was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The allegations regarding the change of Plaintiff's position to Finance Manager are immaterial and irrelevant. Plaintiff has not alleged any facts to establish that the alleged change altered the terms and conditions of her employment or adversely affected her in any way. See *O'Neal v. R.L. Brownlee,* 2004 WL 2827052, at *6 (E.D. Pa. 2004) ("Because plaintiff does not allege that his transfer ... had a material impact on his job conditions, he cannot establish a *prima facie* case of discrimination as to the transfer.") See also *Craven v. Tex. Dep't of Crim. Justice,* 151 F.Supp.2d 757, 766 (N.D. Tex. 2001) (a difference in working hours alone

14

is insufficient as a matter of law for an adverse action) (citing, *inter alia*, *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (loss of "assistant vice president" title, but no reduction in salary, insufficient as a matter of law for adverse action); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (change in title and reporting relationship, and employee's negative perception of transfer, insufficient to show employment action was adverse)). Similarly, the allegations that Shorkey Kia offered various "options" to accommodate Plaintiff are also irrelevant. Plaintiff acknowledges in the Complaint that, at all times, she could have remained at her current dealership location, where no subsequent harassment or interaction with Holland has been alleged to have occurred.

Furthermore, Plaintiff's allegations about the remarks of Mr. Shorkey are also insufficient to constitute a hostile work environment. ""[O]ffhanded comments, and isolated incidents (unless extremely serious)" are not sufficient to sustain a hostile work environment claim. Rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment...."" *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d. Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Here, it is inconceivable that Mr. Shorkey's making comments to encourage Plaintiff to continue in her job in response to her complaints about Holland's 2016 hiring constitutes a Title VII or PHRA violation, especially where Plaintiff has not alleged any facts to establish hiring Holland violated Title VII or the PHRA, and no subsequent harassment or interaction with Holland following his 2016 has been alleged to have occurred.

In order to establish a *prima facie* case, Plaintiff must allege facts to establish that the working conditions were objectively hostile, by virtue of severe and pervasive harassment based upon Plaintiff's sex. *Brooks, Weston, supra*. Moreover, absent evidence that Shorkey Kia failed to stop the alleged harassing behavior, Shorkey Kia and Mr. Shorkey cannot be held liable to

Plaintiff. *Weston, Kunin, Bouton, Maher, supra.* Here, Plaintiff has not even alleged facts that demonstrate that Holland, when hired in 2016, <u>was part of</u> Plaintiff's work environment, let alone that the work environment was <u>hostile</u>. There are no facts from which a jury could infer that Shorkey Kia permitted any discriminatory behavior to continue or that a hostile work environment existed relative to the 2016 hiring of Holland. Accordingly, neither Shorkey Kia nor Mr. Shorkey can be held liable to Plaintiff under any conceivable Title VII or PHRA theory, Plaintiff's claim fails as a matter of law, and the Second Amended Complaint should be dismissed with prejudice pursuant to Fed. R.C.P. 12(b)(6).

## B.   Plaintiff has failed to allege facts to state claims in Counts II and IV for retaliatory conduct under Title VII or the PHRA.

Plaintiff's Retaliation claim is equally without merit.[4] Plaintiff attempts to assert an action for Retaliation based upon being moved to Finance Manager, being told by Mr. Shorkey to "put her game face on and "fake it", and being "forced to work with Holland". (Second Amended Complaint, ¶ 56.) These allegations are insufficient as a matter of law to constitute retaliatory conduct.

In order to make a *prima facie* case of retaliation, the Plaintiff must demonstrate:

1. The plaintiff was engaged in activity protected by the statute;
2. The employer took an adverse employment action against the employee; and
3. There is a causal connection between employee's participation in the protected activity and adverse employment action.

*Robinson v. City of Pittsburgh*, 120 F. 3d 1286, 1299 (3d Cir. 1997).

---

[4] As noted above, for purposes of Plaintiff's retaliation claims, the standard for employer liability is the same under Title VII and the PHRA. See *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d. Cir. 2002). In addition, individual employees cannot be held liable if the employer is not liable for a discriminatory practice. See *Deans v. Kennedy House, Inc.*, 998 F.Supp.2d 393, 414 (E.D. Pa. 2014), affirmed 587 Fed.Appx. 731 (3d Cir. 2014), citing *Scott v. Sunoco Logistics Partners, LP*, 918 F.Supp.2d 344, 357 n. 5 (E.D. Pa. 2013).

16

Here, Plaintiff has not pled any facts to establish retaliation based upon a "protected activity". According to the Second Amended Complaint, upon becoming aware that Holland was hired again in 2016, Plaintiff allegedly complained about the decision, which Plaintiff claims prompted Shorkey Kia and Mr. Shorkey to take the alleged "retaliatory" actions. See Second Amended Complaint, ¶¶ 54-56. Thus, the alleged actions by Shorkey Kia and Mr. Shorkey were not offered in response to the protected activity of reporting the original harassment one (1) year earlier, but rather were in response to Plaintiff's subsequent complaints regarding the decision to hire Holland in 2016. As made clear by the Third Circuit, "an employee cannot dictate that the employer select a certain remedial action". *Knabe, supra*, at 414. Thus, even if Plaintiff's allegations were true, Shorkey Kia and Mr. Shorkey's alleged actions were not in response to "protected activity", but related to conduct which the Third Circuit has expressly ruled that Plaintiff has no right, *viz*. dictating the her employer's remedial actions.

In addition, even if Plaintiff's complaints about the 2016 hiring of Holland had some relation to "protected activity", Plaintiff has not alleged that an "adverse employment" action was taken against her. As set forth at length above, Plaintiff's vague, conclusory allegation that she was required to "work with" Holland is completely without factual support, and Plaintiff has not pled any additional facts to rectify this deficiency. Regarding the alleged change in position to Finance Manager, it is well-established that conduct by an employer qualifies as an adverse employment action only if it is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Robinson*, 120 F.3d at 1300. A "purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Scott v. New Jersey*, 143 Fed.Appx. 443, 2005 WL 1800505 (3d. Cir. 2005) citing *Robinson*, 120 F.3d at 1301. The only

17

allegation that Plaintiff makes regarding the change in her job title is that Plaintiff no longer had the "responsibility" of "running the front desk". (Second Amended Complaint, ¶ 26.) Plaintiff has failed to allege facts to establish that the alleged change in her position to Finance Manager altered the compensation, terms, conditions or privileges of her employment. *See O'Neal v. R.L. Brownlee*, 2004 WL 2827052, at \*6 (E.D. Pa. 2004); *Craven v. Tex. Dep't of Crim. Justice*, 151 F.Supp.2d 757, 766 (N.D. Tex. 2001); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994), discussed *supra*.

Similarly, Plaintiff has failed to allege facts to demonstrate that the alleged comments by Mr. Shorkey to "put her game face on" and "fake it" for the sales team could in any way constitute an "adverse employment action". Clearly, as no subsequent harassment or interaction with Holland has been alleged to have occurred, making comments to Plaintiff to continue in her job in response to her 2016 complaints in no way materially altered the terms of her employment. Again, at all times, she had the "option" of remaining at her current dealership, and Plaintiff has made no allegations to the contrary. See *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015) (citing *Burlington Northern and Sante Fe Ry. Co., v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)) (an adverse employment action must be action that is "materially adverse" to an employee).

Based on the foregoing, the conclusory allegations contained in Counts II and IV of the Second Amended Complaint are insufficient as a matter of law to constitute retaliatory conduct. Accordingly, the Second Amended Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the aforementioned reasons, Defendants, Courtesy Oldsmobile, Inc., d/b/a Jim Shorkey Kia, incorrectly identified in the caption as Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc., and Jim Shorkey, III, respectfully request that this Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismiss the Plaintiff's Second Amended Complaint with prejudice.

Respectfully submitted,

DELL, MOSER, LANE & LOUGHNEY, LLC

By: s/ Donald J. McCormick
Donald J. McCormick, Esquire
PA ID No. 19850
Email: *djm@dellmoser.com*
Jeffrey P. Burke, Esquire
PA ID No. 209684
*Email: jpb@dellmoser.com*
Two Chatham Center, Suite 1500
112 Washington Place
Pittsburgh, PA 15219
Phone: 412-471-1180
Fax: 412-471-9012

*Attorneys for Defendants, Courtesy Oldsmobile, Inc., d/b/a Jim Shorkey Kia, incorrectly identified in the caption as Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc., and Jim Shorkey, III*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** has been served upon all counsel of record by ECF this 20th day of December, 2017.

                Christi Wallace, Esquire
                Katelyn Souders, Esquire
           Kraemer, Manes and Associates, LLC
               U.S. Steel Tower, 48th Floor
              600 Grant Street, Suite 4875
                 *Attorney for Plaintiff*


                            s/ Donald J. McCormick
                            Donald J. McCormick, Esquire