UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN CONNORS, | |
| Plaintiff, | Case No. 2:17-cv-01003-CB |
| v. | |
| JIM SHORKEY FAMILY AUTO GROUP d/b/a KAJARUDAN, INC. and JIM SHORKEY, III, individually, | **HON. CATHY BISSOON** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(6)**

AND NOW comes Plaintiff, Lauren Connors ("Connors"), by and through her attorney Christi Wallace, Esquire of Kraemer Manes and Associates and files the following Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), stating as follows.

## I.      FACTS

The Plaintiff initially commenced this action on July 31, 2017 by filling a Complaint in the District Court for the Western District of Pennsylvania. (ECF. 1). Following Connors' filing, on October 2, 2017, Defendants filed a Motion to Dismiss (ECF. 8) pursuant to Fed. R. Civ. P. 12(b)(6) to which Connors responded with an Amended Complaint on October 23, 2017. (ECF. 11.) However, again, Defendants filed 12(b)(6) and (f) motions on November 2, 2017, and on December 4, 2017, Plaintiff was permitted to amend her Complaint for a second time in order to add PHRA causes of action. (ECF. 21.) Connors filed her second Amended Complaint on

December 7, 2017 (ECF. 22) to which Defendants responded with another 12(b)(6) motion on December 20, 2017 (ECF. 23).

Plaintiff filed this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq,* and the Pennsylvania Human Relations Act ("PHRA") Pa. Stat. Ann. tit. 43 § 951, *et seq,* alleging sexual harassment hostile work environment and retaliation based upon the following facts. *Second Amended Complaint* ¶ 1.

On September 4, 2013, Connors was employed by Defendant ("Shorkey Kia") as a Sales person. *Second Amended Complaint* ¶ 7. Connors was sexually assaulted by her coworker, Todd Holland ("Holland"), during a work-related trip to Las Vegas on October 18, 2015. *Second Amended Complaint* ¶ 8. Connors was drugged by Holland in a hotel room and was sexually assaulted thereafter. *Second Amended Complaint* ¶ 9. Following an investigation, Shorkey Kia determined Holland did sexually assault Connors, and he was given the option to resign, which he accepted. *Second Amended Complaint* ¶ 10 – 11. Because of the egregious assault that she suffered, Connors sought medical treatment for the severe emotional distress that she experienced. *Second Amended Complaint* ¶ 13.

Nearly one year later, in October of 2016, Defendant, Jim Shorkey, III ("Shorkey"), informed Connors he had intentions to re-hire Holland. Connors informed him numerous times that hiring Holland created a hostile environment and would severely upset her and cause her mental health to decline. *Second Amended Complaint* ¶ 16 – 17. To support this, Connors sent numerous emails to Shorkey detailing how re-hiring Holland to work would drastically and negatively affect her health. *Second Amended Complaint* ¶ 19. Despite her complaints, Shorkey gave Connors four options in relation to Holland being rehired: (1) Connors could be moved to a different dealership where she would need to change schedules and adapt to an entirely different

workplace, (2) Connors could accept a different position in her current location with significantly less pay, (3) Connors could remain at the current dealership and deal with immense anxiety and mental health concerns while having to work with Holland or (4) Connors could quit. *Second Amended Complaint* ¶ 20(a) – (e).  However, none of the options given to Connors were viable as moving to a new dealership would affect Plaintiff's time with her child, put her in an uncomfortable situation in a new location and a potential loss in pay.  Option two would result in significantly less income.  Option three would result in severe stress and anxiety daily.  Lastly, option four would leave Plaintiff without a job. *Second Amended Complaint* ¶ 21.

Because of the extreme stress caused by the knowledge Holland would be returning to work with her, Connors used vacation time on October 24, 2016 to consider her options. *Second Amended Complaint* ¶ 24. While she was on vacation, Connors was continually harassed by Shorkey for an answer to his employment options for her despite the fact she had stated she was taking a week off to think about it. *Second Amended Complaint* ¶ 25. Additionally, while she was on vacation, Plaintiff was moved to the position of Finance Manager, losing responsibility that she had prior to her vacation. *Second Amended Complaint* ¶ 26. Additionally, Connors was told by Shorkey to "put [her] game face on" and "fake it" for the sales team, implying that Shorkey expected Connors after suffering sexual assault by Holland to pretend she was not anxious and was in fact, comfortable with working with her assaulter again. *Second Amended Complaint* ¶ 28. Holland returned to work on October 27, 2016 and Connors returned on October 31, 2016. *Second Amended Complaint* ¶ 30-31. In an attempt to work with Holland and keep her job and income, however, when she returned her memories caused her to be physically ill with the thought of having to work with her attacker. *Second Amended Complaint* ¶ 31 – 32. Shorkey still refused to acknowledge Connors mental anguish and refused to offer any option that would allow Connors

to keep her current position or make similar income. *Second Amended Complaint* ¶ 34. Additionally, Plaintiff was changed to the position of Finance Manager where she would be no longer selling vehicles, causing her to lose commissions which are a very significant portion of her compensation. *Second Amended Complaint* ¶ 45 & 65(b)

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. *Conley v. Gibson ,*355 U.S. 41, 45–46 (1957). Although Fed. R. Civ. P. 8(a) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, it is not enough "to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (internal quotation and citation omitted). In ruling on a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips* at 233 (quoting *Twombly*, 550 U.S. 544, 563 (1955) (internal quotation omitted). Additionally, if this case proceeds further, discovery will show the merits of Connors cause of action. Further discovery on this issue will reveal that Defendants' behavior created a sexually hostile work environment by Connors being forced to work with her attacker. Further discovery will also reveal there was a change in the terms and conditions of Plaintiff's employment.  Therefore, the dismissal at this case would be premature as Connors' has sufficiently overcome her 12(b)(6) burden.

### III.   LEGAL ARGUMENT

**A. Plaintiff has alleged sufficient facts to state claims in Counts I and III for sexual harassment hostile work environment under Title VII and the PHRA against Defendants Shorkey and Shorkey Kia.**

1.  <u>Defendant Shorkey is individually liable for discrimination pursuant to the PHRA</u>

Title VII is construed consistently with the PHRA. *Neidigh v. Select Specialty Hospital-McKeesport,* 150 F. Supp. 3d 573 (W.D. Pa. 2015); *Faush v. Tuesday Morning, Inc.,* 808 F.3d 208 (3rd Cir. 2015); *See e.g., Daniels v. School Dist of Philadelphia,* 776 F.3d 181 (finding that plaintiff's PHRA claims are identical to Title VII claims and do not require different analyses). Individual employees may be liable pursuant to the PHRA. *Wein v. Sun Co., Inc.,* 936 F. Supp. 282 (E.D. Pa. 1996) *See Also,* Pa. Stat. Ann. tit. 43, § 955(e) (It shall be an unlawful discriminatory practice. . . [f]or any *person*. . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice. . .).

Defendants' reliance on *Deans v. Kennedy House Inc.,* 998 F. Supp.2d 393, 414 (E.D. Pa. 2014) is unfounded. The language cited by Defendants states that, "[I]ndividual employees cannot be held liable if the employer is not liable for a discriminatory practice. . . . If the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice." *Id.* (internal quotations omitted). However, according to *Mitchell v. Miller,* 884 F. Supp.2d 334 (W.D. Pa. 2012), the applicable statutory language declares it to be an "unlawful discriminatory practice" for *any* employee "to attempt, directly or indirectly, to commit any act declared by [the PHRA] to be an unlawful discriminatory practice." 43 Pa. Stat. § 955(e))(emphasis added), which directly quotes PHRA language that forbids "any person ... to aid, abet, incite, compel, or coerce the doing of any ... unlawful discriminatory practice ... or to attempt, directly or indirectly, to commit any ... unlawful discriminatory practice."

*Deans* specifically references "aiding and abetting," which Black's Law Dictionary has defined, "aiding-and-abetting" liability as "Civil. . . liability imposed on one who assists in or facilitates the commission of an act that results in harm or loss, or who otherwise promotes the act's accomplishment. LIABILITY, Black's Law Dictionary (10th ed. 2014). Whereas, incite has been defined as "[t]o provoke or stir up." INCITE, Black's Law Dictionary (10th ed. 2014).

The facts of this case show that Shorkey is liable individually because he incited the unlawful discriminatory conduct against Connors whenever he incited such conduct by rehiring Holland. *Second Amended Complaint ¶ 30 – 32.* Shorkey's actions by rehiring incited a hostile work environment because it made Connors suffer severe mental anguish, causing anxiety, and stress. *Second Amended Complaint ¶ 21 & 34.* Additionally, because there is *respondeat superior* liability and Shorkey Kia is liable, Shorkey himself is liable for aiding and abetting the discrimination by re-hiring Holland, which promoted discriminatory action.

  2.  <u>Connors has met her Burden of Proving a Hostile Work Environment Existed</u>

Both Title VII and the PHRA prohibit and make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of sex 42 U.S.C.A. § 2000e *et seq*; Pa. Stat. Ann. tit. 43, § 951, *et seq*. To prevail on the claim of sexual harassment hostile work environment, Connors must show five elements: 1) she suffered intentional discrimination because of her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected her, 4) it would have detrimentally affected a reasonable person in like circumstances and 5) a basis for employer liability is present. *Id. Jensen v. Potter*, 435 F.2d 444, 449 (3d Cir. 2006). Additionally, the discriminatory analyses must concentrate not only on individual incidents, but on the *overall scenario. Benny v. Com. of Pa., Dept. of Corrections*, 400 F. Supp. 2d 831, 835 (W.D. Pa. 2005), *aff'd sub nom. Benny v.*

*Pennsylvania, Dept. of Corrections, State Correctional Inst. at Somerset*, 211 Fed. Appx. 96 (3d Cir. 2006)(unpublished)(emphasis added).

> a.    Defendants' Actions were not Reasonably Calculated to Prevent Further Harassment

Defendants' reliance on *Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001); *Maher v. Associated Services for the Blind,* 929 F. Supp. 809 (E.D. Pa. 1996); *Knabe v. Boury Corp.,* 114 F.3d 407 (3rd Cir. 1997); and *Kokinchak v. Postmaster General of the United States,* 677 Fed. Appx. 764 (3rd Cir. 2017) is unfounded because each factual scenario presented in each of the cases Defendants cite in support of its argument is dissimilar to the facts of the case at bar.

Significantly, *Kokinchak*, is completely dissimilar to the case at bar, concerning an employee that merely complained about being bumped into and that a newspaper was read in her office. Additionally, the *Kokinchak* decision out of New Jersey is inapposite with the law that has developed in Pennsylvania. *See Artz*, *infra*.

Title VII charges employers with the responsibility to maintain a workplace environment free of sexual harassment.  There exists a well-defined, dominant public policy favoring voluntary employer prevention of sexual harassment in the workplace and application of sanctions against those who commit such conduct. *Philadelphia Hous. Auth. v. Am. Fedn. of State, County and Mun. Employees*, 956 A.2d 477 (Pa. Cmmw. 2008), aff'd sub nom. *Philadelphia Hous. Auth. v. Am. Fedn. of State, County and Mun. Employees*, Dist. Council 33, Loc. 934, 52 A.3d 1117 (Pa. 2012). In *Philadelphia,* the Court on remand held the arbitrator's decision to reinstate a terminated employee despite finding he had egregiously sexually harassed a co-employee, undermined the public policy of sexual harassment and it could not enforce the decision. *Id.* The court stated, in order to eliminate sexual harassment, Employers must take all necessary steps to prevent sexual harassment from occurring, such as affirmatively raising the subject, expressing strong

disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under Title VII, and developing methods to sensitize all concerned. *Id.* (citing 29 C.F.R. § 1604.11(f)). The EEOC reminds employers that, under Title VII, they have an affirmative duty to eradicate hostile or offensive work environments, and, therefore, Title VII obligates employers to investigate complaints of sexual harassment and deal appropriately with the offending personnel. *Id.*

Looking to other relevant case law, the Court in *Bumbarger v. New Enter. Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 838 (W.D. Pa. 2016), appeal dismissed (June 16, 2016) lays out a helpful framework to analyze the *respondeat superior* element of a sexually hostile work environment claim:

> "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance*, 133 S.Ct. at 2439. To make such a showing, a plaintiff must demonstrate that the employer was "'negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment.'" *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir.2007) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir.1997)). An employer therefore may be directly liable for a co-worker's harassment if the employer failed to provide a reasonable avenue for complaint or, alternatively, if it knew or should have known of the harassment and failed to take prompt remedial action. *Huston*, 568 F.3d at 104; *Hitchens v. Montgomery Co.*, 278 Fed.Appx. 233, 236 (3d Cir.2008); *Andreoli*, 482 F.3d at 644. "An effective grievance procedure—one that is known to the victim and that timely stops the harassment—shields the employer from Title VII liability for a hostile environment." *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 110 (3d Cir.1994). "Prompt remedial action" is conduct "reasonably calculated to prevent further harassment." *Id.*; *Bonenberger*, 132 F.3d at 26. However, this should not be taken to mean that an employer's *investigation* into discriminatory activity must be perfect—or even adequate. *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir.1997). Further, "even if a remedial action does not effectively end the alleged harassment, it may still be legally 'adequate' if it was 'reasonably calculated to do so." *Peace–Wickham v. Walls*, 409 Fed.Appx. 512, 519 (3d Cir.2010) (citing *Jensen*, 435 F.3d at 453). When the employer's response stops the harassment, there can be no employer liability under Title VII as a matter of law. *Weston*, 251 F.3d at 427; *Bouton*, 29 F.3d at 110 ("By definition, there is no negligence if the [sexual harassment grievance] procedure is effective."). In such situations, the employee cannot require the employer to choose a certain remedial action. *Knabe*, 114 F.3d at 414.

Connors' reliance on *Bumbarger* and *Philadelphia* clearly establishes that under the facts of this case, re-hiring the plaintiff's sexual assaulter is not reasonably calculated to prevent further harassment and is against the public policy of Title VII.  Here, as in the *Philadelphia* case, Title VII required Defendants to maintain a workplace environment free form sexual harassment and their re-hiring of Holland is not in accord with that duty, but is a breach of it. *Philadelphia*, 956 A.2d 477.  Further discovery would reveal that Connors, as part of her job duties, would be required to take phone calls and interact with Holland every day as all dealerships are linked. Holland could walk into Connors' dealership location at any point. Having to interact and face her attacker is not reasonably calculated to prevent harassment, but encourage it.  *Bumbarger*, 170 F. Supp. 3d 801, 838; *Philadelphia*, 956 A.2d 477.  Furthermore, based on the facts of this case applied to the law it is legal absurdity to assume that re-hiring someone who previously assaulted another employee would be reasonably calculated to prevent further harassment.

Furthermore, Connors cites to *Artz v. Contl. Cas. Co.,* 720 F. Supp. 2d 706 (E.D. Pa. 2010), where a woman was sexually harassed by another employee of the defendant outside of the work place. *Id.* at 708. Plaintiff informed the employer of the assault and the impact it had on her life giving her extreme concern, anxiety, and distress. *Id.* at 709. Defendant placed the man that assaulted plaintiff on a two month paid leave of absence and promised plaintiff that she would not have to see her assaulter at work and would not have to interact with him during the course of her employment. *Id.* However, two months later, plaintiff's assaulter was back in the building and immediately complained to the defendant. Defendant advised plaintiff that assaulter was still an employee. *Id.*  Defendant gave plaintiff three choices: 1) she could resign, 2) she could move to a different floor, or 3) she could remain on the same floor as her assaulter. *Id.*

The *Artz*, court outlined the following framework in analyzing the plaintiff's claim:

To prevail on the claim, Plaintiff must show five elements: 1) that she suffered intentional discrimination because of her sex; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected her; 4) it would have detrimentally affected a reasonable person in like circumstances; and 5) a basis for employer liability is present. *Id.* (citing *Jensen v. Potter*, 435 F.2d 444, 449 (3d Cir. 2006). Plaintiff must also show that her workplace was both objectively and subjectively offensive, one that a reasonable person would have found hostile or abusive, and one that she, in fact, found hostile and abusive. *Id.* When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated. *Id. Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). A court must consider the totality of the circumstances when determining whether a hostile work environment exists, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's \*711 work performance." *Id.* (citing Harris, 510 U.S. at 23, 114 S.Ct. 367.)

*Artz*, 720 F. Supp. at 710–11.

The facts and law in *Artz* and the case at bar are nearly identical. In *Artz,* a woman was sexually harassed by another employee of the defendant outside of the work place. *Id.* at 708. Here, Connors was sexually harassed outside of the workplace. In *Artz*, the plaintiff informed her employer of the assault and the impact it had on her life giving her extreme concern, anxiety, and distress. *Id.* at 709. Connors also informed Defendants of the assault and its impact on her causing extreme concern, anxiety, and distress. The defendant in *Artz* placed the man that assaulted plaintiff on a two month paid leave of absence and promised plaintiff that she would not have to see her assaulter at work and would not have to interact with him during the course of her employment. *Id.* Here, Defendants had Holland resign and told Connors that she would not have to work with him again. In *Artz*, two months later, plaintiff's assaulter was back in the building and immediately complained to the defendant. Defendant advised Plaintiff that assaulter was still

an employee. *Id.* Here, Holland was rehired after a year, and Connors immediately complained, and like the plaintiff in *Artz*, she was given no recourse.

Significantly, the Defendant in *Artz* gave Plaintiff three choices: 1) she could resign, 2) she could move to a different floor or 3) she could remain on the same floor as her assaulter. *Id.* Here, Connors was given the same three options, and one more, she could quit. Accordingly, the Judge in *Artz, **denied*** defendant's motion to dismiss in its entirety based on the facts alleged and the law presented. *Id.* at 715. Additionally, the court found that under these circumstances she was constructively discharged. *Id*. at 713.

Connors situation is nearly identical to the plaintiff in *Artz,* and under the reasoning and analysis of that case, the Defendants' motion here should be denied as well.  Furthermore, the Honorable Arthur J. Schwab in *Pelesky v. Rivers Casino and Holdings Acq. Co L.P.*, 14CV1542, 2015 WL 12757000, at *1 (W.D. Pa. June 23, 2015) denied a 12(b)(6) motion to dismiss a claim for sexual harassment hostile work environment where the plaintiff was employed as a waitress at Rivers Casino and a customer put a chip down her shirt and proceeded to put his hand down her shirt to remove it, despite the fact that she was told the customer would be banned from the casino for life, the customer was allowed back in and it caused the plaintiff to suffer emotional distress. If an employer shall be held liable for allowing a ***customer*** who previously sexually harassed an employee back into a casino, it would be legal absurdity for the Defendants' in this matter to avoid liability whenever they rehired an *employee*. Connors has proven Defendants' rehiring of Holland was *not* reasonable calculated to prevent further harassment as required by the cases cited herein, but to encourage it.

      b.  Connors Worked in Conditions that were so Intolerable that she was Forced to Resign

A plaintiff who advances compound hostile-environment constructive discharge claim, under Title VII, must show working conditions so intolerable that a reasonable person would have felt compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). *See Artz, supra* (finding a constructive discharge claim existed under circumstances and facts nearly identical to the case at hand). After she was sexually harassed by Holland and he was subsequently terminated, Connors was forced to work again with her attacker. *Second Amended Complaint ¶¶ 8, 9, 10, 11, and ¶ 28.* Connors' was told to "put [her] game face on" and to "fake it." *Second Amended Complaint ¶ 28.* Furthermore, she was told that instead of working with her attacker she (1) could be moved to a different dealership where she would need to change schedules and adapt to an entirely different workplace, (2) could accept a different position in her current location with significantly less pay, (3) could remain at the current dealership and deal with immense anxiety and mental health concerns while having to work with Holland or (4) could quit. *Second Amended Complaint ¶ 20(a) – (e).* Connors' knowledge that she was going to be forced to work with her attacker again caused her extreme stress, anxiety, depression, and physical illness which forced her to take vacation time. *Second Amended Complaint ¶ 24.* All of these facts clearly point to the fact that Connors' was constructively discharged as a result of the conditions she was forced to endure. At any time Connors' harasser, Holland, could have called her and come into contact with her which could have caused her extreme mental and emotional distress which would have caused her anxiety, depression, and physical illness.

Defendants' reliance on *Tunis v. City of Newark,* 184 Fed. Appx. 140 (3rd Cir. 2006) is unfounded because in that case the plaintiff was subjectively afraid to be dismissed, whereas in the case at bar, Connors was afraid to be sexually harassed again or to have to come into contact

or work with her attacker. Additionally, Defendants' reliance on *Nagle v. RMA, The Risk Management Ass'n,* 513 F. Supp. 2d 383 (E.D. Pa. 2007), and *Kantz v. University of the Virgin Islands,* 2016 WL 2997115, 13 (D. Vi. May 19, 2016) are both unfounded because these cases refer to the fear of *dismissal,* not the fear of being sexually harassed or forced to work with or come into contact with a prior sexual harasser.

   c. Defendants' Conduct was so Extreme that it Caused a Change in the Terms and Conditions of Connors' Employment

An adverse employment action is an action that changes or alters the employee's *compensation*, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), as amended (Sept. 13, 2006).

Connors was changed to the position of Finance Manager where she would be no longer selling vehicles, causing her to lose commissions which are a very significant portion of her compensation. *Second Amended Complaint* ¶ 45 & 65(b). Furthermore, she was told that instead of working with her attacker she (1) could be moved to a different dealership where she would need to change schedules and adapt to an entirely different workplace with less pay, (2) could accept a different position in her current location with significantly less pay, (3) could remain at the current dealership and deal with immense anxiety and mental health concerns while having to work with Holland or (4) could quit. *Second Amended Complaint* ¶ 20(a) – (e). All of these clearly qualify as an adverse employment action that changes or alters the compensation of Connor's employment.

**B. Plaintiff has alleged sufficient facts to state claims in Counts II and IV for retaliation pursuant to Title VII and the PHRA**

Connors suffered retaliation as a result of the complaints she made to Defendants' about working with Holland. As a result of the action taken against her, Connors has sufficiently stated a claim for retaliation pursuant to both Title VII and the PHRA.[1]

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir.1995).

Connors engaged in protected activity whenever she made good faith oppositions to Defendants' decision to re-hire Holland, expressed her mental health deterioration numerous times to Defendants', stated to Defendants' that rehiring Holland would create a hostile work entrainment for her and sent numerous emails stating that Holland's re-hiring would drastically and negatively affect her health. *Second Amended Complaint ¶ 71 (a) – (d).* Defendants' took adverse actions against her whenever they gave her four unviable options in retaliation for her complaints of re-hiring Holland, all of which would result in a change in the terms and conditions of her employment. *Second Amended Complaint ¶ 45, 65(b), 72.* There is a causal connection between Connors' participation in her protected activity and adverse employment actions given the short amount of time between her complaints and the retaliation.

---

[1] Title VII is construed consistently with the Pennsylvania Human Relations Act. *Neidigh v. Select Specialty Hospital-McKeesport,* 150 F. Supp. 3d 573 (W.D. Pa. 2015); *Faush v. Tuesday Morning, Inc.,* 808 F.3d 208 (3rd Cir. 2015). *See e. g., Daniels v. School Dist of Philadelphia,* 776 F.3d 181 (finding that Plaintiff's PHRA claims are identical to Title VII claims and do not require different analyses).

As for the first element "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). *Slagle v. County of Clarion,* 435 F.3d 262, 266 (3d Cir.2006). Whether the employee opposes, or participates in a proceeding against the employer's activity, the employee must hold an objectively reasonable belief, in good faith, the activity they oppose is unlawful under Title VII. *Clark County v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). Here, Connors' protected activity clearly quality under Title VII's definition of protected activity because she opposed discrimination against her whenever she informed Defendants' of how she would be affected of the decision to rehire Holland.

Defendants' reliance on *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997) is unfounded because large parts of its holding have been overturned in *Moore v. City of Philadelphia*, 461 F.3d 331, 340–42 (3d Cir. 2006), *as amended* (Sept. 13, 2006)

As for the second element of the *prima facie* case, the Supreme Court has clarified what plaintiffs must show to make out retaliation claims under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Until recently, it was required that those claiming unlawful retaliation under Title VII—like those claiming discrimination made unlawful by that provision—to show an "adverse employment action" that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997) (internal quotation marks omitted). Connors suffered an adverse action when it was offered that she (1) could be moved to a different dealership where she would need to change schedules and adapt to an entirely

different workplace with less pay, (2) could accept a different position in her current location with significantly less pay, (3) could remain at the current dealership and deal with immense anxiety and mental health concerns while having to work with Holland or (4) could quit. Additionally, Connors suffered another adverse employment action when she was changed to the position of Finance Manager where she would be no longer selling vehicles, causing her to lose commissions which are a very significant portion of her compensation.

Employees claiming retaliation by workplace harassment, therefore, were required to show retaliatory harassment that was "severe or pervasive enough to create a hostile work environment" that would violate the anti-discrimination provision of Title VII in order to violate Title VII's protection from retaliation. *Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir.2006).

In *Burlington Northern,* decided after the District Court's opinion in *Moore*, the Supreme Court disagreed with a formulation like the one we adopted in *Robinson* and *Jensen.* 126 S.Ct. at 2410 (citing *Robinson,* 120 F.3d at 1300, as an example of this standard). It found that the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and accordingly, "that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 2412–13. Because the discrimination and retaliation provisions "are not coterminous," the Court concluded that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 2414. Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse." *Id.* at 2415.

Despite the fact that Connors has established an adverse employment action, even under the outdated *Robinson* test, the actions that were taken against her are "materially adverse." Clearly, offers that Connors (1) could be moved to a different dealership where she would need to change schedules and adapt to an entirely different workplace with less pay, (2) could accept a different position in her current location with significantly less pay, (3) could remain at the current dealership and deal with immense anxiety and mental health concerns while having to work with Holland or (4) could quit. *Second Amended Complaint* ¶ 20(a) – (e) are clearly materially adverse to her, as well as the fact that she was moved to a significantly lower paying position. *Second Amended Complaint* ¶ 45, 65(b), 72.

To establish the third element of the *prima facie* case, as clarified in *Burlington Northern,* a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. "Many may suffer ... harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir.2006). This third element "identif[ies] what harassment, if any, a reasonable jury could link to a retaliatory animus." *Id.* at 449–50. "The ultimate question in any retaliation case is an intent to retaliate *vel non." Id.* at 449 n. 2.

If the employee establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* approach applies in which "the burden shifts to the employer to advance a legitimate, non-retaliatory reason" for its conduct and, if it does so, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500–01

(3d Cir.1997). To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). Defendants' have articulated no showing whatsoever as to a legitimate non-retaliatory reason for retaliating against Connors and therefore cannot be gratned summary judgment.

### Defendant Misnamed in Caption

To the extent that the Defendant Shorkey Kia is misnamed in the caption as "Jim Shorkey Family Auto Group d/b/a Kajarudan, Inc.," Plaintiff will consent to a caption name change switching Defendant's name to "Courtesy Oldsmobile, Inc., d/b/a Jim Shorkey Kia"

### Conclusion

Plaintiff has established a cause of action for both claims of Sexual Harassment Hostile Work Environment and Retaliation pursuant to both Title VII and the PHRA. A review of applicable case law has shown that the law, as applied to the facts of this case, is sufficient to state a claim of Sexual Harassment Hostile Work Environment and Retaliation pursuant to both Title VII and the PHRA and therefore, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint should be denied.

Respectfully submitted,

*Christi Wallace*

Christi Wallace, Esq.
Kraemer, Manes and Associates, LLC
U.S. Steel Tower, 48th Floor
600 Grant Street, Suite 4875
Pittsburgh, PA 15219

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2018 I electronically filed the foregoing Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Donald McCormick, Esq.
Jeffrey P Burke, Esq
Two Chatham Center, Suite 1500
112 Washington Place
Pittsburgh, PA 15219

/s/   Christi Wallace
Christi Wallace, Esq.
Pa ID: 313721
**KRAEMER, MANES & ASSOCIATES LLC**
US Steel Tower, 48th Floor
600 Grant St, Suite 4875
Pittsburgh, PA 15219
(412) 626-5575 Direct
(412) 206-0834 Fax
cw@lawkm.com