IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN CONNORS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 17-1003 |
| | ) |
| v. | ) |
| | ) Judge Cathy Bissoon |
| JIM SHORKEY FAMILY AUTO GROUP, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendants Jim Shorkey Family Auto Group ("Shorkey Kia") and Jim Shorkey, III ("Shorkey") (**Doc. 23**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' Motion will be DENIED.

## A. BACKGROUND[1]

Plaintiff Lauren Connors ("Plaintiff") worked for Shorkey Kia as a Sales Person between September 4, 2013 and October 31, 2016. Doc. 22 ¶ 7. On October 18, 2015, Plaintiff was drugged and sexually assaulted by a coworker, Todd Holland ("Holland"), during a work-related

---

[1] The following background facts are taken from Plaintiff's Second Amended Complaint (Doc. 22). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Second Amended Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pleaded factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

1

trip to Las Vegas.  Id. ¶¶ 8, 9.  Following an investigation, Defendants determined that Holland sexually assaulted Plaintiff.  Id. ¶ 10.  Holland was given the option to resign, which he accepted.  Id. ¶ 11.  Holland's resignation, in lieu of termination, entitled Holland to a severance payment and his commissions.  Id. ¶ 12.  Plaintiff suffered severe emotional distress as a result of the sexual assault and had to seek medical treatment.  Id. ¶ 13.

In October of 2016, Shorkey informed Plaintiff that he intended to rehire Holland.  Id. ¶ 16.  Plaintiff told Shorkey numerous times that she would be very upset and her mental health would deteriorate if Holland were rehired.  Id. ¶ 17.  Plaintiff also sent emails to Shorkey detailing how rehiring Holland would drastically and negatively impact her health.  Id. ¶ 19.  In response to Plaintiff's complaints, Shorkey gave Plaintiff four options:  1) Plaintiff could be moved to a different dealership where she would need to change schedules and adapt to an entirely different workplace; 2) Plaintiff could accept a different position in her current location with significantly less pay; 3) Plaintiff could remain at the current dealership and deal with immense anxiety and mental health issues as a result of having to work with Holland; or 4) Plaintiff could quit her job.  Id. ¶ 20.  According to Plaintiff, these options were not viable.  Id. ¶ 21.  Plaintiff used her vacation time and took a week off work beginning October 24, 2016, to think about her options.  Id. ¶ 24.  While Plaintiff was on vacation, her schedule was changed and she was moved to the position of Finance Manager which no longer involved "running the desk."  Id. ¶ 26.  When she returned, Shorkey additionally told Plaintiff to "put your game face on" and "fake it" for the sales team, and that she should "control her emotions," despite being forced to work with the person who sexually assaulted her.  Id. ¶¶ 28, 29.

Holland returned to work for Defendant on October 27, 2016.  Id. ¶ 30.  Plaintiff returned to work on October 31, 2016.  Id. ¶ 31.  According to Plaintiff, she "worked with Holland" on

October 31st.  Id. ¶ 32.  Plaintiff claims that, during the course of that day, "memories returned and she was physically ill," and that her "mental health deteriorated exponentially."  Id. ¶¶ 32, 33.  Shorkey still refused to acknowledge Plaintiff's mental anguish and refused to offer any option that would allow Plaintiff to keep her current position or make a similar income.  Id. ¶ 34.

Plaintiff now asserts four claims against Defendants:  Counts I and III state sexual harassment and hostile work environment claims under Title VII and the PHRA, and Counts II and IV state retaliation claims under Title VII and the PHRA.  Defendants have moved to dismiss all four causes of action.

**B.     ANALYSIS**

  1. <u>Hostile Work Environment Claims</u>

To prove a *prima facie* case of a hostile work environment under either Title VII or the PHRA, a plaintiff must establish five elements: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability.  <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 104 (3d Cir. 2009); <u>Clegg v. Falcon Plastics, Inc.</u>, 17 F. App'x 18, 24, n.6 (3d Cir. 2006) (holding, for purposes of a hostile work environment claim, that the court's Title VII analysis would apply equally to plaintiff's PHRA claim).  In the co-worker harassment context, a plaintiff may establish employer liability by showing that "management knew or should have known about the harassment, but failed to take prompt and adequate remedial action."  <u>Jensen v. Potter</u>, 435 F.3d 444, 453 (3d Cir. 2006) (citation and internal quotation marks omitted).  Even if not effective, an employer's remedial action is adequate if it is "reasonably calculated" to end the harassment.  <u>Knabe v. Boury Corp.</u>, 114 F.3d 407, 412-13 (3d Cir. 1997).

3

Plaintiff claims that, by rehiring Holland, Defendants knowingly subjected her to a hostile work environment. The Court of Appeals for the Third Circuit has held that, while not a *per se* rule, "'in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment.'" Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718 (3d Cir. 1997) (quoting Ellison v. Brady, 924 F.2d 872, 883 (9th Cir. 1991)). Here, Plaintiff claims that Holland drugged and sexually assaulted her one year before he was rehired. (Doc. 22 ¶ 9). Under these circumstances, the Court finds that Plaintiff, or any reasonable person, could reasonably feel that Holland's mere presence in the workplace created an abusive environment. See Hawk v. Americold Logistics, 2003 WL 929221, at *9 (E.D. Pa. Mar. 6, 2003) (finding a hostile work environment where plaintiff was assigned to work in close proximity to a man who had propositioned her for sex on a daily basis, at one point throwing her up against a chair while indicating that he wished to have sex with her).

Defendant argues, however, that Plaintiff's hostile work environment claims fail because she does not "allege any facts that indicate that any sexual harassment or interaction between Plaintiff and Holland occurred" after Holland was rehired. (Doc. 24 at 13). Defendant notes in its Brief in Support of its Motion to Dismiss that "Holland was not hired for his former position but rather he was hired at a different position at another Shorkey dealership roughly 50 miles away from Plaintiff's location, which was owned and operated by a separate entitity, Kejarudan, Inc." Doc. 24 at 4 n.2. In evaluating a motion to dismiss, the Court may not consider assertions made by Defendants outside the pleadings. Rather, the Court will consider only those facts alleged in the Second Amended Complaint, which include, among other allegations: (1) that Plaintiff "worked with Holland" on October 31, 2016, Doc. 22 ¶ 32; (2) that Defendants' decision to rehire Holland could have required Plaintiff "to work with her attacker every day,"

4

id. ¶ 40(c); (3) that "Holland was in management and Plaintiff could have interactions with him as part of her everyday job duties," id. ¶ 40(d); (4) that Plaintiff "was forced to work with Holland," id. ¶ 45; and (5) that "Defendant . . . allow[ed Holland] to come in contact with Plaintiff," id. ¶ 48(b).   Based on these allegations, the Court finds that Plaintiff has sufficiently pleaded that she and Holland both did, and regularly would have, come into contact following his rehire.  Again, such interactions could reasonably have created a hostile work environment.  See Konstantopoulos, 112 F.3d at 718; Hawk, 2003 WL 929221, at *9.[2]

Furthermore, given Plaintiff's allegations that she shared her concerns with Shorkey numerous times, the Court finds that Shorkey certainly may be held individually liable under the PHRA.  Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996) (holding that a supervisor who fails to stop known acts of discrimination may be held liable under the PHRA for "aiding or abetting" the discriminatory acts); Pa. Stat. Ann. tit. 43, § 955(e) ("It shall be an unlawful discriminatory practice. . . [f]or any person. . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice. . ."). Likewise, Plaintiff's complaints to Shorkey may give rise to employer liability under Title VII based on a theory of respondeat superior.  Knabe, 114 F.3d at 412 ("[I]f an plaintiff proves that management level employees had actual or constructive knowledge about the existence of a

---

[2] Plaintiff is cautioned, however, that, to the extent discovery reveals that Holland was hired to work at a location 50 miles from her workplace, she will have a very difficult time proving her hostile work environment claims.  Under those circumstances, Plaintiff would have to show that, despite Holland working 50 miles away, she would have had to interact with him regularly, at meetings, trainings or other work-related events.  The mere fact that Holland worked for the same company as she did, at a location where they would *not* have regularly interacted, is not sufficient to prove a hostile work environment.  See Kokinchak v. Postmaster Gen. of the United States, 677 F. App'x 764 (3d Cir. 2017) (employee's allegation that co-worker who allegedly had previously sexually harassed her was present near employee in workplace on a few occasions over multiple years was insufficient to constitute hostile work environment sexual harassment under Title VII).

5

sexually hostile work environment and failed to take prompt and adequate action," the employer can be held liable for damages suffered by a plaintiff.).

Accordingly, at this juncture, the Court finds that Plaintiff has stated viable hostile work environment claims and Defendants' Motion to Dismiss Counts I and III will be denied.

2. Retaliation Claims

The Court will also deny Defendants' motion to dismiss Plaintiff's retaliation claims at Counts II and IV. To establish a *prima facie* case of retaliation under Title VII and the PHRA, a plaintiff must plead sufficient facts establishing that: (1) she engaged in protected activity; (2) the employer took adverse action against her; and (3) a causal link exists between her protected activity and the employer's adverse action. Selvato v. SEPTA, 658 F. App'x 52, 56 (3d Cir. 2016). Here, Plaintiff claims that Defendants retaliated against her for complaining to Shorkey about his decision to rehire Holland by changing her schedule, moving her to the Finance Manager position, and telling her to "put her game face on" and to "fake it" for the sales team.

Defendants argue that Plaintiff's complaints to Shorkey do not constitute "protected activity" under Title VII and the PHRA, because "an employee cannot dictate that the employer select a certain remedial action" following a complaint about sexual harassment. (Doc. 24 at 17) (citing Knabe, 114 F.3d at 414)). However, according to Plaintiff, Holland's rehire was not a "remedial action" but rather, in itself, the action that created a hostile work environment. Furthermore, contrary to Defendants' arguments, courts have held that an employee's complaints about an employer's failure to take adequate remedial action can constitute protected activity under Title VII. See Turlip v. N. Pocono Sch., Dist., No. 05CV1182, 2006 WL 547924, at *13 (M.D. Pa. Mar. 6, 2006) ("Plaintiff's alleged unanswered complaints to North Pocono about . . .

6

the lack of investigation and remedial action by North Pocono to address her complaints" was "protected activity"); Hartman v. Sterling, Inc., 2003 WL 22358548, at *8 (E.D. Pa. Sept. 10, 2003) ("An acceptable form of protected activity under Title VII are informal protests of discriminatory employment practices, including making complaints to management."). Thus, the Court finds that Plaintiff's complaints to Shorkey qualify as "protected activity" under Title VII and the PHRA.

Defendants next argue that Plaintiff does not allege that she suffered any "adverse employment action." (Doc. 24 at 17). The Court disagrees. Construing the pleadings in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged that she suffered an adverse employment action when her schedule and job responsibilities were changed. See Doc. 24 at 17-18 (Defendants conceding that the change in Plaintiff's position to Finance Manager meant that she no longer had the "responsibility" of "running the front desk"); Hawa v. Coatesville Area Sch. Dist., 2016 WL 2593854, at *3 (E.D. Pa. May 4, 2016) (citation omitted) ("Even in the absence of a change in salary or job title, a material reduction in job duties or quality of the working environment is sufficient to establish retaliation."). Furthermore, Shorkey's statements to Plaintiff to "put her game face on" and to "fake it" for the sales team may be "circumstantial evidence of a 'pattern of antagonism' following [her] protected conduct [that] can [ ] give rise to the inference" of discrimination. Smith v. Henderson, No. CIV. A. 00-4310, 2001 WL 1003240, at *4 (E.D. Pa. Aug. 30, 2001), aff'd, 39 F. App'x 760 (3d Cir. 2002)

For these reasons, the Court will deny Defendants' motion to dismiss the retaliation claims at Counts II and IV.

7

# I. ORDER

For the reasons stated above, Defendants' Motion to Dismiss (**Doc. 23**) is DENIED.

Defendants must answer the Second Amended Complaint on or before February 13, 2018.

IT IS SO ORDERED.


January 30, 2018							s/Cathy Bissoon
								Cathy Bissoon
								United States District Judge


CC (via ECF email notification):

All Counsel of Record